IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOSEPH WAYNE HUNTER (TDCJ No. 1981619), | § § § | |
| Plaintiff, | § § | |
| V. | § § | No. 3:14-cv-1817-B-BN |
| OFFICER M. JAMES, | § § § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This *pro se* civil rights action has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and an order of reference from United States District Judge Jane J. Boyle. *See* Dkt. No. 34.

Defendant Officer Maeland James has moved for summary judgment as to his affirmative defense of qualified immunity. *See* Dkt. Nos. 53 & 54. Prior to the Court's setting a briefing schedule as to that motion, James responded, *see* Dkt. No. 61, to Plaintiff Joseph Wayne Hunter's qualified-immunity-related discovery requests, *see* Dkt. No. 56, as limited or restated under the Court's order, *see* Dkt. No. 59; *see also* Dkt. No. 58. Hunter then filed a response in opposition to the motion. *See* Dkt. Nos. 66, 67, & 68. And, while James has not filed a reply brief – and the deadline by which to do so has not expired – he will not be prejudiced by the failure to consider any reply brief he would have filed.

The undersigned issues the following findings of fact, conclusions of law, and recommendation that the Court should grant James's motion for summary judgment and dismiss this action (including any remaining claims and all other pending motions) with prejudice.

## Applicable Background

This action, first filed in May 2014, was summarily dismissed in January 2015, after the Court concluded that Hunter could not state a claim against then-Dallas County District Attorney Craig Watkins; that he could not sue the Dallas Police Department (as the Department is not a jural entity); and that it should abstain, under *Younger v. Harris*, 401 U.S. 37 (1971), from considering Hunter's allegations arising from a traffic stop on August 25, 2012, a related search and arrest, his detention, and the timeliness of his state criminal trial because consideration of those claims would interfere with a then-ongoing state criminal proceeding. *See Hunter v. Watkins*, No. 3:14-cv-1817-B, 2015 WL 104981 (N.D. Tex. Jan. 6, 2015); *see also, e.g., Burgett v. State of Texas,* No. 7:04-cv-227-R, 2005 WL 473680, at *1 (N.D. Tex. Feb. 28, 2005) (recognizing that, under *Younger*, a federal court should abstain from exercising its jurisdiction when to do so would interfere with an ongoing state criminal proceeding except in the most extraordinary circumstances and on a clear showing of both great and immediate harm (collecting cases)).

Hunter filed a motion to reopen this case in June 2016, citing the conclusion of the state criminal proceeding. *See* Dkt. No. 13. The verified amended complaint that

he filed in response to the Court's notice of deficiency [Dkt. No. 16] included claims against Watkins, the State of Texas, and the police officer who stopped Hunter in August 2012 (identified as "James M."), *see id.* at 3-4; *see also* Dkt. No. 21 (Hunter's verified responses to Court's questionnaire issued after reopening of this case). The Court, accepting the undersigned's findings, conclusions, and recommendation as to the screening of the amended complaint (the "screening FCR"), dismissed Hunter's claim against the State and renewed claim against Watkins and entered final judgment as to those defendants under Federal Rule of Civil Procedure 54(b). *See* Dkt. Nos. 26 & 27; *see also* Dkt. No. 22 (the screening FCR).

But, regarding the claims against the police officer who made the traffic stop, then-identified as a Dallas police officer named "James M.," as explained by the undersigned in the screening FCR:

> Similar to his initial complaint, Hunter now claims that, on August 25, 2012, his car was pulled over by a Dallas police officer, identified as James M., without probable cause to conduct a traffic stop. *See* Dkt. No. 16 at 4. According to Hunter, the officer then conducted an unlawful search of the vehicle and discovered a white substance the officer falsely reported to be cocaine. *See id.* Hunter was arrested for unlawful possession of a controlled substance, arraigned, and released on bond. *See id.*; Dkt. No. 7 at 11; *State v. Hunter*, No. F12-59492 (194th Jud. Dist. Ct., Dallas Cty., Tex.). He was then arrested on May 29, 2013 on other criminal charges. *See* Dkt. No. 7 at 11; *State v. Hunter*, No. F13-56295 (265th Jud. Dist. Ct., Dallas Cty., Tex.).
>
> When Hunter filed this action and answered the Court's questionnaire, in May 2014, both state criminal proceedings were pending. But Hunter was convicted of the charges in No. F13-56295 and sentenced to 25 years' incarceration in August 2014. And, because of that conviction and sentence, the State requested that the charges in No. F12-59492 be dismissed in February 2015. *See* Dkt. No. 16 at 4.
>
> As Hunter's state criminal proceedings have concluded, abstention

is no longer a basis to not consider his claims against Officer James M. Dkt. No. 22 at 5-6; *see also id.* at 6-8 (explaining that, "at least for purposes of initial judicial screening under [28 U.S.C. §§] 1915A and 1915(e)(2)(B), *Heck v. Humphrey*, 512 U.S. 477 (1994), does not bar Hunter's constitutional claims" related to the stop, search, and arrest "because the incident underlying Hunter's claims against this defendant, which also resulted in the charges in No. F12-59492, did not end in a conviction. And, thus, *Heck*'s 'favorable termination' requirement does not appear to be implicated" (citations omitted)).

The Court determined that it would allow the claims related to the stop, search, and arrest should to proceed, *see* Dkt. Nos. 22, 26, & 28, and, construing subsequent motions filed by Hunter as requesting that the Court assist him to identify a Doe defendant, *see* Dkt. Nos. 29 & 33, the Court took judicial notice that the police report filed in the state criminal case initiated as a result of the traffic stop (No. F12-59492) indicates that Hunter was stopped on August 25, 2012 by Lancaster Police Officer M. James, Badge #3380, *see* Dkt. No. 35 at 1-2. Hunter responded to the Court's order to indicate that James was the proper defendant, *see* Dkt. No. 36. James was then served, *see* Dkt. Nos. 37, 38, 39, & 44, and he answered on February 13, 2017, asserting, among other affirmative defenses, that he is entitled to qualified immunity, *see* Dkt. No. 46.

His court-ordered motion for summary judgment as to qualified immunity, *see* Dkt. Nos. 53, is supported by documents submitted in compliance with Federal Rule

of Civil Procedure 56(c), *see* Dkt. No. 53-1. Hunter's response in opposition to summary judgment, however, is not supported by sworn materials unique from the materials submitted by James. *See* Dkt. No. 66.

*Pro se* litigants "'are not held to the same standards of compliance with formal or technical pleading rules applied to attorneys, the Fifth Circuit Court of Appeals has never allowed *pro se* litigants, or any other type of litigants, to oppose summary judgments by the use of unsworn materials.'" *Burroughs v. Shared Housing Ctr.*, No. 3:15-cv-333-N-BN, 2017 WL 876333, at *3 (N.D. Tex. Jan. 31, 2017) (quoting *Rodriguez v. Bexar Cty. Hosp. Dist.*, No. SA-14-CA-861-OG, 2015 WL 7760209, at *20 (W.D. Tex. Nov. 30, 2015) (collecting cases)), *rec. accepted*, 2017 WL 875853 (N.D. Tex. Mar. 3, 2017); *see also Davis v. Fernandez*, 798 F.3d 290, 293 (5th Cir. 2015) ("Of course, this is not to say that *pro se* plaintiffs don't have to submit competent evidence to avoid summary judgment, because they do." (citation omitted)).

While the materials Hunter has filed in opposition to the motion for summary judgment are not verified, Hunter's amended complaint and his responses to the applicable Court questionnaire are verified. *See* Dkt. Nos. 16 & 21. As such, in considering the motion for summary judgment, the undersigned has credited these materials as "competent summary-judgment evidence." *Leggett v. Lafayette*, 608 F. App'x 187, 190 (5th Cir. 2015) (per curiam) (citing *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 382 n.2 (5th Cir. 2013); *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam)).

## Legal Standards

<u>Qualified Immunity</u>

"Qualified immunity attaches when an official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam)); *accord Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 134 S. Ct. 3, 5 (2013) (per curiam) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011); internal quotation marks omitted); *accord City & Cty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774 (2015); *see also Mullenix*, 136 S. Ct. at 308 ("[a] clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right'"(quoting *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012))).

While review of a motion for summary judgment based on qualified immunity is accomplished in two steps, a court may conduct the required two-step examination in any order. *See Pearson*, 555 U.S. at 236. Regardless of which prong is addressed first, a court must decide "whether the facts, taken in the light most favorable to the plaintiff, show the officer's conduct violated a federal constitutional or statutory right." *Luna v. Mullenix*, 773 F.3d 712, 718 (5th Cir. 2014) (citing *Tolan*, 134 S. Ct. at 1865;

*Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004)), *reversed on other grounds*, 136 S. Ct. 305 (2015). Put differently, under the first prong, a court simply must decide "whether the plaintiff has alleged a violation of a constitutional right." *Charles v. Grief*, 522 F.3d 508, 511 (5th Cir. 2008).

A court also must decide "whether the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Flores*, 381 F.3d at 395. This second prong of the analysis requires a court to determine "whether the defendant's conduct was objectively reasonable in light of the clearly established law at the time of the incident." *Charles*, 522 F.3d at 511. That is, "whether it would have been clear to a reasonable officer in the [defendants'] position that their conduct was unlawful in the situation they confronted." *Wood v. Moss*, 134 S. Ct. 2056, 2067 (2014) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001); internal quotation marks and brackets omitted from original)).

As soon as a defendant invokes his entitlement to qualified immunity, "the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam); *see Harris v. Serpas*, 745 F.3d 767, 771 (5th Cir. 2014) ("Once the defendant raises the qualified immunity defense, 'the burden shifts to the plaintiff to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law.'" (quoting *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008))).

"Despite this burden-shifting, all reasonable inferences must be drawn in the

non-movant plaintiff's favor." *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016) (citing *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010)). That said, a plaintiff's burden at summary judgment "'to rebut a claim of qualified immunity once the defendant has properly raised it in good faith'" "'is a 'demanding [one].'" *Mendez v. Poitevent*, 823 F.3d 326, 331 (5th Cir. 2016) (respectively quoting *Cole v. Carson*, 802 F.3d 752, 757 (5th Cir. 2015); *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015)).

And the qualified immunity defense is appropriately resolved at the summary judgment stage when (1) a plaintiff has established that the defendant has engaged in the complained-of conduct or (2) the court "skip[s], for the moment, over ... still-contested matters to consider an issue that would moot their effect if proved." *Harlow*, 457 U.S. at 818; *see also Haverda v. Hays Cty.*, 723 F.3d 586, 599 (5th Cir. 2013). "'If resolution of [qualified immunity] in the summary judgment proceedings turns on what the defendant actually did, rather than on whether the defendant is immunized from liability ..., and if there are conflicting versions of his conduct, one of which would establish and the other defeat liability, then the case is inappropriate for summary judgment.'" *Haverda*, 723 F.3d at 599 (quoting *Barker v. Norman*, 651 F.2d 1107, 1123-24 (5th Cir. Unit A July 1981)).

Accordingly, a court's qualified immunity inquiry at this stage requires that the court "accept the plaintiff's version of the facts (to the extent reflected by proper summary judgment evidence) as true." *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655

(5th Cir. 2004); *see, e.g., Falon v. Holly*, 480 F. App'x 325, 326 (5th Cir. 2012) (per curiam) (observing that "verified complaint[s] and other verified pleadings serve as competent summary judgment evidence" (citing *Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003))); *see also Tolan*, 134 S. Ct. at 1863 ("[I]n ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."); *Anderson v. Valdez*, 845 F.3d 580, 600 (5th Cir. 2016) (observing that "[e]ven in the context of qualified immunity, 'the facts alleged' must be '[t]aken in the light most favorable to the party asserting the injury'" (quoting *Tolan*, 134 S. Ct. at 1865)).

"Although summary judgment may be appropriate based on a plaintiff's inability to prove the facts essential to recovery, this has 'nothing to do with the qualified immunity defense.'" *Haverda*, 723 F.3d at 599 (quoting *Barker*, 651 F.2d at 1124)). "[I]mmunity ... [is] an entitlement distinct from the merits of the case." *Good v. Curtis*, 601 F.3d 393, 397 (5th Cir. 2010) (citation and quotation marks omitted).

Traffic Stops and the Fourth Amendment

"'Traffic stops are deemed seizures for the purposes of the Fourth Amendment.'" *United States v. Henry*, 853 F.3d 754, 757 (5th Cir. 2017) (quoting *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005)). And the legality of a stop "is analyzed under the framework articulated in *Terry v. Ohio*, 392 U.S. 1 (1968)." *Lopez-Moreno*, 420 F.3d at 430 (citations omitted); *see United States v. Crosby*, 32 F. App'x 129, 2002 WL 335008, at *1 (5th Cir. Feb. 21, 2002) ("Traffic stops are analyzed under

the investigative detention standard set forth in *Terry v. Ohio*....”). As such, “[a] stop must be justified by reasonable suspicion at its inception and be reasonably related in scope and duration to the circumstances justifying the stop.” *Carney v. Brandon Police Dep't*, 624 F. App'x 199, 201 (5th Cir. 2015) (citing *Terry*, 392 U.S. at 19-20).

“Reasonable suspicion exists if there are ‘specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant a detention.’” *Allen v. Cisneros*, 815 F.3d 239, 245 (5th Cir. 2016) (quoting *Terry*, 392 U.S. at 21; brackets omitted). “This standard ‘requires more than merely an unparticularized hunch, but considerably less than proof of wrongdoing by a preponderance of the evidence.’” *Davila v. United States*, 713 F.3d 248, 258 (5th Cir. 2013) (quoting *United States v. Rodriguez*, 564 F.3d 735, 741 (5th Cir. 2009)). A court assesses “the reasonableness of the stop ‘by conducting a fact-intensive, totality-of-the-circumstances inquiry,’ and considering the ‘information available to the officer[s] at the time of the decision to stop a person.’” *Id.* (quoting *United States v. Silva*, 957 F.2d 157, 160 (5th Cir. 1992)).

A stop therefore does not violate the Fourth Amendment if, under “the facts available to the officer at the time of detention,” there is “‘some minimum level of objective justification for the officers’ actions – but more than a hunch – measured in light of the totality of the circumstances.’” *Allen*, 815 F.3d at 245 (quoting *United States v. Michelletti*, 13 F.3d 838, 840 (5th Cir. 1994); citing *Davila*, 713 F.3d at 258).

**Analysis**

<u>Officer James</u>

The version of the August 25, 2012 traffic stop from Hunter's verified complaint is – in whole – that it was "illegal," "without probable cause," and was followed by an "illegal search and seizure." Dkt. No. 16 at 4. Although Hunter requested and obtained discovery in order to respond to the qualified-immunity issues raised by James, *see* Dkt. Nos. 56, 58, 59, 60, & 61, Hunter has offered the Court no further factual details to show that his version of the traffic stop alleges "a violation of a constitutional right." *Charles*, 522 F.3d at 511; *cf. Estate of Henson v. Wichita Cty., Tex.*, No. 7:06-cv-44-O-AH, 2008 WL 3287098, at *3 (N.D. Tex. Aug. 7, 2008) ("If the plaintiff fails to allege a constitutional violation, then the defendant is entitled to qualified immunity and the court need not inquire any further.").

It is established that the facts that control now are those facts presented by the non-movant that are supported by competent summary-judgment evidence, which evidence can include verified pleadings. *See, e.g., Haggerty*, 391 F.3d at 655. But the Court need not accept a non-movant's verified factual allegations that are merely conclusory or speculative. *See, e.g., Britt v. Raymes*, No. 5:07-CV-3140-BO, 2013 WL 1091047, at *7 (E.D.N.C. Mar. 15, 2013) (in considering a qualified-immunity motion for summary judgment, noting that "'conclusory or speculative allegations do not suffice, nor does a mere scintilla of evidence in support of the non-moving party's case'" (quoting *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002);

brackets omitted)); *Deodatti Colon v. Rosado Rivera*, 846 F. Supp. 156, 161 (D.P.R. 1993) (holding that, "to strip [a defendant] of the qualified immunity defense that shields [that defendant] from liability," the competent summary-judgment "evidence must be significantly probative to show differing versions of the facts which justify a trial, ' ... not merely conclusory allegations, improbable inferences or unsupported speculation'" (quoting *Medina Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8, 10 (1st Cir. 1990))); *cf. Comeaux v. Sutton*, 496 F. App'x 368, 372 (5th Cir. 2012) (per curiam) ("'[W]hen documentary evidence blatantly contradicts a plaintiff's account so that no reasonable jury could believe it, a court should not credit the plaintiff's version on summary judgment.'" (characterizing the holding of *Scott v. Harris*, 550 U.S. 372 (2007); quoting *Witt v. W. Va. State Police, Troop 2*, 633 F.3d 272, 276-77 (4th Cir. 2011); internal quotation marks and original brackets omitted)).

Nor need the Court accept a non-movant's verified factual allegations that are based merely on his personal beliefs. For example, in the context of a claim that a plaintiff's constitutional rights were violated under a theory of retaliation, "[t]he relevant showing must be more than the prisoner's personal belief that he is the victim of retaliation." *Decker v. Dunbar*, 633 F. Supp. 2d 317, 347 (E.D. Tex. 2008) (citing *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997); *Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995)); *see Bonaparte v. Jimenez*, No. 5:12-cv-639-Oc-10PRL, 2015 WL 846752, at *5 (M.D. Fla. Feb. 26, 2015) (in the context of a motion for summary judgment as to qualified immunity, observing that "[c]onclusory allegations of

retaliation, without more, are insufficient to state a claim of retaliation" and that "[a] prisoner must show more than his personal belief that he is the victim of retaliation" (citing *Woods*, 51 F.3d at 580; citations omitted)).

Here, the Court may consider James's competent summary-judgment evidence. Once the Court disregards Hunter's conclusory, speculative, and belief-based assertions – that, for example, the stop was "illegal," Dkt. No. 16 at 4 – James's evidence is not inconsistent with Hunter's version of the facts but merely fills in the factual gaps Hunter leaves open.

Before turning to that evidence, however, even Hunter admits that James's role is limited to the traffic stop itself. *See* Dkt. No. 16 at 4 ("On August 25, 2012, an illegal traffic stop without probable cause was made by James.... [A]n illegal search and seizure took place, by [Dallas police] officers.").

That stop was made after James observed Hunter – who, at the time, was traveling on a major freeway in Dallas – (1) fail "to maintain a single marked lane for about 2 miles"; (2) slow down to 10 miles below the speed limit once Hunter "observed that there was an [o]fficer following him"; and (3) "increase[] his speed to about 80 miles per hour for about 1 mile" after he realized that James "was going to continue to follow him." Dkt. No. 53-1 at 5. Under the totality-of-the-circumstances, these specific facts show that reasonable suspicion existed for the stop prior to James's initiating it. *See, e.g., Crosby*, 2002 WL 335008, at *2 ("It is quite reasonable for an officer to find that weaving on a major street of a large city during a period of modest traffic is unsafe. Thus, we find that the initial stop of Cosby's vehicle was warranted.").

Accordingly, Hunter has not stated a Fourth-Amendment-seizure claim against James based on the stop. And James is therefore entitled to qualified immunity.

Remaining Claims

To the extent that Hunter alleges that Dallas police officers – not James – violated his Fourth Amendment right against illegal search and/or seizure and/or arrest after he was stopped by James – and after James "made contact with the vehicle" and "observed [two] clear yellow baggies on [Hunter's] lap," which Hunter freely admitted contained cocaine, Dkt. No. 53-1 at 5 – Hunter fails to allege facts that the search (or a subsequent seizure or arrest) involved more than Dallas officers taking over a scene at which another officer had observed drugs in plain view after a valid *Terry* stop, *see* Dkt. No. 53-1 at 10 (James's affidavit, providing that he neither removed Hunter nor the drugs in his lap from the vehicle prior to Dallas officers arriving and taking over the scene), *cf. United States v. Lewis*, 217 F. App'x 389, 390-91 (5th Cir. 2007) (per curiam) ("[T]he officers had probable cause to arrest [Lewis], even without the evidence in the safe. A tip provided by a confidential informant, police corroboration of that tip, and the drugs and drug paraphernalia in plain view in his hotel room constituted probable cause to arrest Lewis, regardless of any contraband found in the hotel safe." (footnote omitted)); *United States v. Thibodeaux*, 276 F. App'x 372, 381 (5th Cir. 2008) (per curiam) ("[W]here an officer chased a suspect and arrested him without probable cause, then looked for evidence in the area where the chase had occurred and observed a gun in plain view in the suspect's truck, the gun had to be suppressed as a product of the illegal arrest despite the fact that the gun was in plain

-14-

view and conceivably could have been discovered in the absence of the arrest."
(characterizing the holding of *United States v. Tookes*, 633 F.2d 712, 714-16 (5th Cir.
1980))).

Hunter's allegations therefore fail to allege a plausible Fourth Amendment claim
against the Dallas officers. Therefore, such a claim – if it exists – should be dismissed
under 28 U.S.C. §§ 1915A and 1915(e)(2)(B), *see, e.g., Moore-Bey v. Cohn*, 69 F. App'x
784, 787-88 (7th Cir. 2003) (per curiam) ("That leaves only the defendants who were
never served. In its final order terminating the case, the district court did not explain
its rationale for dismissing the three unserved defendants. But we are confident that
the court, after having reviewed Moore-Bey's evidence as to the served defendants,
carried out its statutory mandate to dismiss a complaint whenever it becomes apparent
to the court that no claim for relief is stated or the case is frivolous." (collected
authority omitted)); *cf. Edmon v. Chaney*, 160 F. App'x 437, 439 (5th Cir. 2006) (per
curiam) ("A district court must dismiss a complaint that it determines to be frivolous.
Service upon the defendants prior to such a dismissal is not required." (citation
omitted)).

## Recommendation

The Court should grant James's motion for summary judgment [Dkt. No. 53] and
dismiss this action (including any remaining claims and all other pending motions, *see*
Dkt. Nos. 40, 41, 42, 43, 45, 56, & 63) with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all

parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: August 2, 2017

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE